TALIAFERRO, Judge.
Plaintiff seeks judgment against defendant for $906.83, being the price of fifty-nine prefabricated undersink cabinets allegedly sold and delivered under purchase order of December 16, 1946. Defendant, while admitting signing the mentioned purchase order, denies liability for the price of the cabinets described therein. He resists the suit on the ground that the cabinets were not delivered within' the period fixed by the contract between the parties. In amplification of this defense, he avers: That on November 5, 1946, he entered into a subcontract with one Barnet Brezner, doing business as Barnet Brezner General Contractor, whereby he was awarded contract, inter alia, for furnishing the material and equipment, and installing certain plumbing work on a housing project undertaken by the United States of America at Louisiana Polytechnic Institute, in Ruston, Louisiana; that on December 16, 1946, defendant contacted by telephone, Mr. J. L. Rabun, plaintiff’s vice-president, and then gave the purchase order on which this suit is based, “on condition that the merchandise be shipped from Minneapolis, Minnesota, within thirty (30) days from that date”, said order being confirmed in writing by plaintiff on that date; that defendant’s contract with Brezner provided that “time was of the essence thereof”, and Brezner was given the right therein to cancel same in the event the material and. equipment described therein was not installed and the work thereby covered was not performed, within the stipulated time.
Defendant further alleged that the cabinets were not shipped from Minneapolis until February 2, 1947, and arrived in Shreveport on or about five days later; that Brezner canceled the contract with defendant insofar as concerned the cabinets, on February 7, 1947; that had plaintiff not breached its obligations with him with respect to delivery, said cabinets would have reached Shreveport, Louisiana, not later than January 23, 1947; and thereby, the loss of his contract would have been averted. He prayed that plaintiff’s demand be rejected at its cost and there was judgment *634 accordingly, from which plaintiff appealed.
■We are unable to reconcile the allegations of defendant’s answer and the evidence in the case, with the contract between him and Brezner, attached to the answer. This instrument is dated July 18, 1946, and it provides that the rwork. comprehended therein should begin not later than November 18, 1946, and be completed not later than December 28, 1946; whereas the order for the cabinets 'given 'by defendant to plaintiff bears date of December 16, 1946. Presumably, this contract, as regards time for beginning and completing the work, was extended.
The cabinets in question were manufactured by a company in Minneapolis, Minnesota, on plaintiff’s order, and, in keeping with prior agreement, were actually delivered to carrier, consigned! to defendant at Shreveport, Louisiana, f.o.b., on January 28, 1947. The manufacturer looked to plaintiff for payment of the price charged it. In turn, defendant was charged by plaintiff with the price quoted him, the amount involved herein.
The cabinets did not arrive in Shreveport until February 12, 1947, some twenty-eight days after the expiration of the thirty day period, and not on February 7th, as alleged in answer, which was fifteen days after delivery thereof to- the carrier. Therefore, it is manifest that had! the cabinets been delivered to the carrier on the last day of the thirty-day period, January 15th, the shipment would have reached Shreveport several days prior to February 7, 1947, the day 'defendant’s contract was canceled, and the date he canceled his contract with plaintiff.
The record leaves no doubt that all parties concerned!, including the manufacturer, well understood that these cabinets were intended for use in houses being hastily erected at Ruston, Louisiana, to accommodate veterans who would attend the Louisiana Polytechnic Institute; and, for this reason, time was of the essence of the contract.
Defendant testified that when he discussed with Mr. Rabun, plaintiff’s vice-president, on the telephone, the placing of the order for the cabinets, he definitely told him that delivery of the cabinets must be made within thirty days from that date, December 16, 1946. His testimony is confirmed by plaintiff’s letter to him, signed by Mr. Rabun, of same date, which reads:
“We confirm our quotation to you this morning covering a quantity of #l-SE-50O under-sink cabinets, as manufactured by the Industrial Sales Engineers, at $15.37 each, f.O'.b. shipping point.
“They state that they could ship within thirty days from the time order is received.”'
It, therefore, is clear that the manufacturer agreed to make shipment of the goods within thirty days from date of order therefor, and, in this respect, plaintiff’s obligation was coextensive with that of the manufacturer.
Plaintiff relies for success herein mainly upon the well known and firmly established principle of law that, as a rule, the seller discharges his obligation to the purchaser, when delivery of purchased' goods is made to the common carrier, consigned to him. The facts of this case clearly remove it from the far reaching effects of this rule. Delivery was to have been made to the carrier within thirty days. This was not done; in fact, as said heretofore, such delivery was only made some two weeks after expiration of the thirty day period. This delay brought about cancellation of the contract under which defendant was acting. He had no other use for the cabinets. They would have been worthless to him, — dead' property on his hands.
Naturally, after the lapse of the period' within which the cabinets were to have been shipped to defendant, and, likely prior thereto, defendant communicated with plaintiff several times, urging that the cabinets be-¡delivered; and on February 6, 1947, acting" upon untrue information that they were then in Shreveport, he called at the office of the carrier in that city, with his truck, to-pick them up. Because of these acts on his. part, especially those performed after the-contract had been breached, it is specially pleaded that he is now estopped to contest liability herein. The plea was expressly overruled by the lower court, and we are sure this ruling is correct. So long as de *635 fendant was being indulged by his principal contractor, he indulged the plaintiff. He could, under the circumstances, well afford to do this, but ¡when his own contractor terminated the contract there remained nothing for him to do for self protection, save to follow suit.
The judgment that absolves defendant from liability for the price of the cabinets is not only supported by law, but is bolstered by equitable principles and considerations.
The judgment from which appealed, is affirmed with costs.